IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ARWYN HEILRAYNE, ET AL.,<br>    Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF TEXAS<br>AT AUSTIN, ET AL.,<br>    Defendants. | §<br>§<br>§<br>§<br>§   CIVIL ACTION NO. 1:25-CV-640-DAE<br>§<br>§<br>§<br>§ |

**DEFENDANT WRAY'S
SECOND MOTION TO DISMISS**

## I.     MOTION

Defendant Christopher Wray moves to dismiss all claims asserted against him in this matter, pursuant to Federal Rule of Civil Procedure 12(b)(6). The amended complaint in this matter fails to state any claim for which relief may be granted, and so Wray respectfully requests dismissal with prejudice.

## II.    STATEMENT OF THE CASE

This is a lawsuit arising from Plaintiffs' participation in a protest that took place at the University of Texas at Austin on April 24, 2024.[1] Plaintiffs claim violations of their First and Fourth Amendment rights by a variety of actors, as well as violations of Title VI of the Civil Rights Acts of 1964.[2]

---

[1]     Doc. 42 at ¶ 1.

[2]     Id. at ¶¶ 192-323.

Christopher Wray is a Texas State Trooper who was at all times acting under color of law and within the scope of his employment with the Texas Department of Public Safety (DPS).[3] Originally all Plaintiffs sued Wray, pursuant to 42 U.S.C § 1983, asserting violations of their First and Fourth Amendment rights.[4] Wray filed a motion to dismiss, asserting qualified immunity.[5] Plaintiffs then amended, and now only Mia Cisco asserts claims against Wray, and only for First Amendment violations.[6]

The allegations against Defendant Wray in the amended complaint do nothing to improve on the original:

- Wray "was present at the April 24th protest" and "assisted in the interference with Ms. Cisco's expressive conduct on the basis of her viewpoint."[7]

- Wray "was near [Cisco] in the line of bike unit officers forming the barricade and restricting the protesters' movement, close to where she would soon be arrested."[8]

- Cisco questioned Wray about police presence and protestor arrests, and "Wray expressed disdain for the protestors' cause and made unsolicited remarks about Palestine, Islam, and the Middle East." Wray also allegedly "referenced 'Hamas

---

[3]   Id.

[4]   Doc. 1 at ¶¶ 128-157.

[5]   Doc. 38.

[6]   Doc. 42 at ¶¶ 230-34, 277-82.

[7]   Id. at ¶ 29.

[8]   Id. at ¶ 109.

tunnels,' voiced his hatred for Hezbollah, and claimed that 'no Muslim country supports Palestine.'"[9]

The amended complaint also, for whatever reason, features what appears to be Cisco taking a selfie that includes Trooper Wray.[10] Ironically, the selfie shows the pair standing well away from a distant crowd, and not at all in a "line of bike unit officers forming the barricade and restricting the protesters' movement."[11]

### III.   BRIEF IN SUPPORT OF MOTIONS

#### A. Group Pleadings

As a threshold matter, Wray reiterates that the allegations recited above are the only factual allegations specifically pled against him in the complaint. The complaint is otherwise replete with conclusory allegations that numerous ill-defined groups took collective action to violate Plaintiffs' rights. Such "group pleadings," even outside of the qualified immunity context, are generally forbidden in the Fifth Circuit.[12] But this is a qualified immunity case, and "when plaintiffs make only 'collective allegations' against a group of police officers, without justification for the lack of individualization, they fail to overcome assertions of qualified immunity at the 12(b)(6) stage."[13]

---

[9]   Id. at ¶ 109.

[10]  Id. at 30.

[11]  Id. at ¶ 109.

[12]  See Southland Securities Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353 (5th Cir. 2004).

[13]  Sinegal v. City of El Paso, 414 F.Supp.3d 995, 1004 (W.D. Tex. 2019) (citation omitted).

B.  **Qualified Immunity**

   1. **Assertion & Standard**

Wray again asserts his entitlement to qualified immunity. Qualified immunity shields government officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[14] Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.[15] Courts are required to undertake a two-step analysis of the issue of qualified immunity: (1) whether a constitutional right was violated, and (2) whether the allegedly violated right was "clearly established."[16] This analysis may be performed in any order, and failure to establish either element is dispositive in favor of qualified immunity.[17] Ultimately, government officials are entitled to qualified immunity if their conduct was objectively reasonable in light of the legal rules that were clearly established at the time of their actions.[18]

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[19] The Supreme Court does not necessarily require a controlling case directly on point, "but existing

---

[14]   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

[15]   Malley v. Briggs, 475 U.S. 335, 341 (1986).

[16]   McClendon v. City of Columbia, 305 F.3d 314, 322-23 (5th Cir. 2002).

[17]   Pearson v. Callahan, 555 U.S. 223, 236 (2009); Saucier v. Katz, 533 U.S. 194, 201 (2001).

[18]   McClendon, 305 F.3d at 323.

[19]   Reichle v. Howards, 566 U.S. 658, 664 (2012) (cleaned up).

precedent must have placed the statutory or constitutional question beyond debate."[20] This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition."[21] The specificity of this inquiry is especially important in Fourth Amendment cases, where "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine … will apply to the factual situation the officer confronts."[22]

The Supreme Court has repeatedly counseled that constitutional law is clearly established for qualified immunity purposes in only two ways: Supreme Court precedent or a "robust consensus of cases of persuasive authority" across the Courts of Appeals.[23] By either path, the relevant precedent must "squarely govern" the facts at hand.[24]

As discussed below, Cisco fails to establish any constitutional violation assignable to Wray and fails to demonstrate objective unreasonableness in light of settled law. Wray is entitled to qualified immunity.

### 2. Pleading Standard

Federal Rule of Civil Procedure 8(a)(2) requires that pleadings in all federal lawsuits contain "a short and plain statement of the claim showing that the pleader is entitled to relief …" The pleading must "give the defendant fair notice of what the

---

[20] Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

[21] Saucier, 533 U.S. at 201.

[22] Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting Saucier, 533 U.S. at 205).

[23] al-Kidd, 563 U.S. at 742; see also City & County of San Francisco v. Sheehan, 575 U.S. 600, 617 (2015); Taylor v. Barkes, 575 U.S. 822, 826 (2015).

[24] Mullenix, 577 U.S. at 13-14 (citing and quoting Brosseau v. Haugen, 543 U.S. 194, 201 (2004)).

plaintiff's claim is and the grounds upon which it rests."[25] A plaintiff's obligation under this standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[26] Allegations that offer only the possibility that a defendant acted unlawfully, or facts merely consistent with liability, do not demonstrate entitlement to relief.[27]

Once a defendant asserts the defense of qualified immunity, "a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants."[28] Threshold determination of qualified immunity "requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury."[29] Plaintiffs bear the burden to not merely state claims upon which relief may be granted, but to demonstrate by their pleadings the inapplicability of qualified immunity to those claims.[30]

### 3. First Amendment (Count I)

Cisco's First Amendment claim against Wray is still an "unadorned, the defendant-unlawfully-harmed-me" accusation which simply does not give rise to a constitutional

---

[25]   Conley v. Gibson, 355 U.S. 41, 47 (1957).

[26]   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[27]   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[28]   Schultea v. Wood, 47 F.3d 1427, 1432-34 (5th Cir. 1995).

[29]   Reyes v. Sazan, 168 F.3d 158, 161 (5th Cir. 1999).

[30]   Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009).

claim.[31] Cisco does nothing more than assert that Wray voiced personal opinions that were at odds with her own.[32] She then tethers Wray's speech to a completely different action taken by a completely different actor, suggesting that causation between the two is "evident" simply because "Wray's statements [were] made moments before Ms. Cisco's arrest.[33]

> The *post hoc ergo propter hoc* fallacy assumes causality from temporal sequence. It literally means "after this, because of this." It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship.[34]

The *post hoc ergo propter hoc* fallacy fails basic tests of logic,[35] and it fails to state a claim in this Court.[36] Count I is a classic example and should be disposed of forthwith.

As previously argued, if Wray was voicing personal opinions when this alleged colloquy with Cisco took place, his public employment matters not, because his speech is entitled to the same First Amendment protection that Cisco invokes in this suit.[37] This is

---

[31] Iqbal, 556 U.S. at 678 (internal citations omitted).

[32] Doc. 42 at ¶ 109.

[33] See Id. at ¶¶ 29, 233, 281.

[34] John Stuart Mill, *A System of Logic, Ratiocinative and Inductive*, 8th ed. (New York: Harper & Brothers, 1904), at 552.

[35] Huss v. Gayden, 571 F.3d 442, 459 (5th Cir. 2009) (citing and quoting BLACK'S LAW DICTIONARY 1186 (7th ed. 1999)).

[36] Moini v. Univ. of Tex. at Austin, 832 F.Supp.2d 710, 714 (W.D. Tex. 2011).

[37] See Garcetti v. Ceballos, 547 U.S. 410, 417-19 (2006); Connick v. Myers, 461 U.S. 138, 143-146 (1983); and Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968).

true even though Wray spoke while on the job, because commentary on conflict in the Holy Land is plainly not "ordinarily within the scope" of the duties of a Department of Public Safety official.[38] Wray's own First Amendment rights may only be limited, very narrowly, by his employer and perhaps defamation law;[39] not by students merely piqued by diversity of opinion.

If Wray was somehow speaking on behalf of the government, Cisco' claim fares no better. While "people have some right to receive information from others without government interference," they have absolutely no constitutional right to dictate what information the government should *provide*.[40] The Fifth Circuit observed recently that there is no Supreme Court precedent "suggest[ing] that the First Amendment obligates the government to provide information to anyone."[41] The same is true for the far more outlandish suggestion that the First Amendment obligates the government to keep quiet.

Plaintiffs' First Amendment claim against Wray is simply not a First Amendment claim. It is a deeply hypocritical attempt to weaponize the First Amendment to retaliate against a speaker for expressing an opposing point of view. Cisco fails the first step of the qualified immunity analysis with regard to Count I, and this claim must therefore be dismissed.

---

[38]   Kennedy v. Bremerton Sch. Dist., 597 U.S. 507, 529-31 (2022) (quoting Lane v. Franks, 573 U.S. 228, 240 (2014)).

[39]   Kennedy, 597 U.S. at 527-29; Garcetti, 547 U.S. at 417-19; Connick, 461 U.S. at 147; Pickering, 391 U.S. at 568-73.

[40]   Little v. Llano Cnty., ___ F.4th ___, 2025 WL 1478599, 2025 U.S. App. LEXIS 13121*, at *20-*21 (5th Cir. 2025).

[41]   Id. at *18.

### 4. Retaliation (Count II)

To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) she was engaged in constitutionally protected activity; (2) the officer's actions injured her; and (3) the officer's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct.[42] The Court has no need to look anywhere but the second element, where Cisco's amended retaliation claim fairs worse than the original.

The original complaint asserted a conclusory Fourth Amendment claim that included Wray, dangling a suggestion that Wray might have somehow been involved in Cisco's arrest.[43] The amended complaint removes all doubt and substantially admits that Wray was not involved in the arrest.[44] Aside from Wray's alleged speech, to which Cisco clearly takes umbrage, the complaint is otherwise bereft of any "actions" by Wray which "injured" Cisco.[45] Cisco has therefore failed to state any claim for First Amendment retaliation against Wray.

### 5. Clearly Established Law

While the amended complaint plainly fails to state any constitutional claim against Wray, and Cisco runs aground at the first step of the qualified immunity analysis, the second step should not be neglected. Cisco also makes no effort to meet her high burden to

---

[42] Degenhardt v. Bintliff, 117 F.4th 747, 758 (5th Cir. 2024) (citing Alexander v. City of Round Rock, 854 F.3d 298, 308 (5th Cir. 2017)).

[43] Doc. 1 at ¶¶ 147-157.

[44] Doc. 42 at ¶¶ 311-15.

[45] Degenhardt, 117 F.4th at 758.

demonstrate that the law was clearly established concerning the facts of this case, aside from merely declaring it to be so.[46]

After a good-faith search, Wray has been unable to find any Supreme Court precedent or "robust consensus of cases of persuasive authority" which would have "placed the statutory or constitutional question beyond debate" on April 24, 2024.[47] There is no precedent that would suggest that a police officer violates the Constitution by voicing an opinion on international affairs to a single protestor. If Cisco for some reason does not fail at the first step of the qualified immunity analysis, she certainly does at the second.

## IV.   PRAYER

Mia Cisco has failed to state any constitutional claim against Christopher Wray and has failed to overcome Wray's assertion of qualified immunity. Wray respectfully requests that all claims brought against him be dismissed with prejudice.

      Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

---

[46] See Doc. 42 at ¶¶ 194, 239-41.

[47] al-Kidd, 563 U.S. at 741-42.

*/s/ CHRISTOPHER LEE LINDSEY*
**CHRISTOPHER LEE LINDSEY**
Assistant Attorney General
Attorney-In-Charge
State Bar No. 24065628

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2157 (Phone No.)
(512) 370-9314 (Fax No.)

**ATTORNEYS FOR WRAY**

### CERTIFICATE OF SERVICE

I, **CHRISTOPHER LEE LINDSEY**, Assistant Attorney General, do hereby certify that a true and correct copy of the foregoing has been served on all parties electronic noticing on this the 28th day of July, 2025.

*/s/CHRISTOPHER LEE LINDSEY*
**CHRISTOPHER LEE LINDSEY**
Assistant Attorney General