IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HEILRAYNE, ET AL., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | No. 1:25-CV-00640-DAE |
| UNIVERSITY OF TEXAS, ET AL., | § § § | |
| *Defendants.* | § | |

**DEFENDANTS JIM DAVIS'S AND KEVIN ELTIFE'S MOTION FOR RECONSIDERATION**

**INTRODUCTION**

Defendants Jim Davis and Kevin Eltife ("Defendants") ask this Court to reconsider its denial of their motion to dismiss Plaintiffs' First Amendment retaliation claims against them in their official capacities.[1] Defendants seek reconsideration because this Court's analysis of Plaintiffs' individual-capacity First Amendment claims shows that Plaintiffs' official-capacity First Amendment retaliation claims should also be dismissed. There are three reasons why.

First, the First Amendment doctrine articulated in *Tinker v. Des Moines Independent Community School District* undoubtedly applies to public universities. Binding U.S. Supreme Court and Fifth Circuit precedent supports this conclusion.

Second, this Court found that "Defendants could have reasonably forecasted that the April 24th protest would become a substantial disruption to school activities, given the national context of similar protests also titled 'The Popular University for Gaza.'"[2] This means that *Tinker* applies here,

---

[1] The only remaining claims are Plaintiffs' First Amendment retaliation claims against Davis and Eltife in their official capacities. ECF 62, 39.
[2] *Id.* at 38 (quoting ECF 48, 5).

as its test is satisfied when the facts might reasonably lead a school official to forecast a substantial disruption to the school.

Finally, because *Tinker* applies, it defeats Plaintiffs' First Amendment retaliation claims. This is because *Tinker* permits a school official to restrict a student's expressive activities when the official reasonably forecasts that those activities would substantially disrupt the school's operations. In that circumstance, the student's expressive conduct is unprotected. And it is black-letter law that a plaintiff must have engaged in constitutionally protected activity to sustain a First Amendment retaliation claim.

## RELEVANT BACKGROUND

Plaintiffs are four current or former University of Texas at Austin ("UT Austin") students. They allege they were unlawfully arrested and disciplined by UT Austin officials in violation of their First Amendment rights. Plaintiffs' claims turn on their participation in, and UT Austin's response to, an on-campus protest that occurred on April 24, 2024.[3]

Defendants moved to dismiss Plaintiffs' lawsuit. This Court granted in part and denied in part this motion to dismiss.[4]

## LEGAL STANDARD

While widely accepted, a motion to reconsider an interlocutory order is not a formally recognized motion in the Federal Rules of Civil Procedure.[5] Most courts in this circuit appear to

---

[3] *Id.* at 2–4.
[4] *Id.* at 39.
[5] *See Swanston v. City of Plano, Tex.*, 4:19-CV-412, 2021 WL 229533, at *1 (E.D. Tex. Jan. 22, 2021) (citing cases); *see also Lopez v. City of Biloxi, Miss.*, CIVA103CV122WJGJMR, 2006 WL 2255149, at *1 (S.D. Miss. Aug. 6, 2006); *United States v. Knapper*, CRIM.A.99-252, 2004 WL 595244, at *2 (E.D. La. Mar. 24, 2004); *Jones v. Physicians Mut. Ins. Co.*, CIV. A. 00-1345, 2000 WL 1511156, at *1 (E.D. La. Oct. 6, 2000).

analyze a motion to reconsider an interlocutory order under Fed. R. Civ. P. 54(b).[6] Under Rule 54(b), the trial court has significant discretion over whether to grant or deny a motion to reconsider.[7] When analyzing a motion under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."[8]

## ARGUMENT

Defendants' argument for reconsideration involves three steps. First, Defendants will show that *Tinker* applies to public universities under binding precedent from the Supreme Court and the Fifth Circuit. Second, Defendants will demonstrate that *Tinker's* test is satisfied here, given this Court's determination that UT Austin officials could have reasonably forecasted that the April 24th protest would be substantially disruptive. Finally, Defendants will explain why *Tinker's* application defeats Plaintiffs' First Amendment retaliation claims.

### I. Supreme Court And Fifth Circuit Precedent Shows That *Tinker* Applies To Public Universities.

In *Tinker v. Des Moines Independent Community School District*, the Supreme Court held that student conduct that "materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech."[9] In its order denying Defendants' motion to dismiss Plaintiffs' First Amendment retaliation claims, this

---

[6] *See Marin Holdings Int'l Ltd. v. Frontera Offshore, Inc.*, No. CV 18-6490, 2019 WL 13222314, at *3 (E.D. La. Oct. 15, 2019); *E. M. v. Lewisville Indep. Sch. Dist.*, No. 4:15-CV-00564, 2017 WL 1788025, at *1 (E.D. Tex. May 4, 2017); *Leon v. Salinas*, No. CV B-10-303, 2015 WL 13942665, at *4 (S.D. Tex. Mar. 18, 2015); *Barzelis v. Flagstar Bank, F.S.B.*, No. 4:12-CV-611-Y, 2013 WL 12126117, at *1 (N.D. Tex. May 31, 2013); *Bonn Operating Co. v. Devon Energy Prod. Co., LP*, No. 4:06-CV-734-Y, 2009 WL 10677307, at *2 (N.D. Tex. Apr. 21, 2009). *But see Tesco Corp. v. Weatherford Int'l, Inc.*, No. CV H-08-2531, 2014 WL 12595304, at *1 (S.D. Tex. Feb. 27, 2014) (analyzing a motion to reconsider an interlocutory order under Fed. R. Civ. P. 59(e)).
[7] *See Marin Holdings Int'l Ltd.*, 2019 WL 13222314, at *4; *Bonn Operating Co.*, 2009 WL 10677307, at *2.
[8] *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quotations omitted).
[9] 393 U.S. 503, 513 (1969).

Court reasoned that "neither the Fifth Circuit nor the Supreme Court has definitively answered whether *Tinker* applies in higher education settings."[10] But this is incorrect. Both the Supreme Court and the Fifth Circuit have held that *Tinker* applies to public universities.

The Supreme Court applied *Tinker* to a public university in *Healy v. James*. There, a state college denied official recognition to a group of students who wanted to form a local chapter of the Students for a Democratic Society ("SDS").[11] The plaintiffs sued, asserting a denial of their First Amendment rights.[12] The college's president justified the nonrecognition decision by claiming that the SDS chapter would be a "disruptive influence" to the college.[13]

*Healy* held that the college's "disruptive influence" rationale could have provided a lawful basis for its decision not to recognize SDS if it had been based on the organization's activities and factually supported by the record.[14] The Court cited *Tinker* as one of the main cases supporting this conclusion and explained that "actions which 'materially and substantially disrupt the work and discipline of the school'" can be lawfully prohibited.[15] *Healy* left no doubt that *Tinker* applies to higher education: "[I]f there were an evidential basis to support the conclusion that [the local] SDS posed a substantial threat of material disruption . . . the President's decision should be affirmed."[16]

Binding Fifth Circuit caselaw also shows that *Tinker* applies to public universities. In *Jenkins v. Louisiana State Board of Education*, six Grambling College students were suspended for their alleged participation in certain campus disturbances.[17] The students challenged their suspensions on First Amendment grounds.[18] The Fifth Circuit found that *Tinker* established "[t]he controlling rule to be

---

[10] ECF 62, 38.
[11] *Healy v. James*, 408 U.S. 169, 170 (1972).
[12] *Id.* at 177.
[13] *Id.* at 188.
[14] *Id.*
[15] *Id.* at 189 (quoting *Tinker*, 393 U.S. at 513).
[16] *Id.*
[17] 506 F.2d 992, 994 (5th Cir. 1975).
[18] *Id.*

applied" to the students' First Amendment claims,[19] and it found that the students' actions "resulted in a material disruption of the campus and of the rights of others."[20] Thus, the Court held that the students' conduct "[was] not protected by the First Amendment."[21]

*Healy* and *Jenkins* confirm that *Tinker* applies to public universities; additional caselaw further supports this conclusion. In *Shamloo v. Mississippi State Board of Trustees of Institutions of Higher Learning*, two Jackson State University students asserted a First Amendment claim, arguing that they were unlawfully subjected to disciplinary proceedings for their participation in an on-campus demonstration.[22] The plaintiffs directed their challenge to two university regulations governing demonstrations held on campus.[23]

Before analyzing the constitutionality of the college's regulations, the Fifth Circuit first determined whether the plaintiffs' actions were "protected."[24] The Court explained that "[t]his issue must be addressed in light of the Supreme Court's decision in *Tinker*."[25] The Court found the record unclear on whether the plaintiffs' actions were materially disruptive or involved a substantial invasion of the rights of others.[26] The Court therefore could not decide whether the plaintiffs' conduct was unprotected under *Tinker* and proceeded to assess the college's regulations.[27]

Finally, in *Esfeller v. O'Keefe*, a Louisiana State University student charged with non-academic misconduct sought to enjoin enforcement of portions of the university's code of conduct on grounds that they violated the First Amendment.[28] The Court stated that *Tinker* applies to a public university's

---

[19] *Id.* at 1002.
[20] *Id.* at 1003.
[21] *Id.*
[22] 620 F.2d 516, 518 (5th Cir. 1980).
[23] *Id.*
[24] *Id.* at 520.
[25] *Id.* at 521.
[26] *Id.* at 522.
[27] *Id.*
[28] 391 F. App'x 337, 338 (5th Cir. 2010) (unreported).

viewpoint-based regulations,[29] and it held the challenged regulations were lawful under *Tinker* as they were directed "at speech that intrudes upon the rights of other students."[30]

In sum, the Supreme Court and the Fifth Circuit have held that *Tinker* applies to public universities. The question then is whether *Tinker* applies to Plaintiffs' claims. This Court's order on Defendants' motion to dismiss shows that it does.

## II. *Tinker* Applies Because UT Austin Officials Could Have Reasonably Forecasted A Substantial Disruption Arising From The April 24th Protest.

The Fifth Circuit has explained that "[t]he *Tinker* test is satisfied when: an actual disruption occurs; or the record contains facts 'which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities.'"[31] A school official's decision on this issue must be afforded deference.[32]

Here, this Court correctly determined, based on the facts alleged in Plaintiffs' complaint, that "Defendants could have reasonably forecasted that the April 24th protest would become a substantial disruption to school activities, given the national context of similar protests also titled 'The Popular University for Gaza.'"[33] The Court noted further that the "[s]ubsequent discipline also could have reasonably been viewed as justified in light of the University's cancellation of the protest."[34] It follows that *Tinker* applies here.[35]

This leads to the final question: How does *Tinker's* application impact Plaintiffs' First Amendment retaliation claims? In short, *Tinker* leaves Plaintiffs' conduct unprotected, and thus Plaintiffs cannot establish that they were retaliated against for engaging in protected activity.

---

[29] *Id.* at 341.
[30] *Id.* (quotations omitted) (ellipsis omitted).
[31] *Bell v. Itawamba Cnty. Sch. Bd.*, 799 F.3d 379, 397 (5th Cir. 2015) (quoting *Tinker*, 393 U.S. at 514).
[32] *Id.*
[33] ECF 62, 38 (quoting ECF 48, 5).
[34] *Id.*
[35] *See Bell*, 799 F.3d at 397.

**III.    Under *Tinker*, Plaintiffs' First Amendment Retaliation Claims Fail As A Matter Of Law.**

**A.    *Tinker* Leaves Plaintiffs' Speech Unprotected, Which Means They Cannot Establish An Essential Element Of Their First Amendment Retaliation Claims.**

When *Tinker* applies, it operates to make the plaintiffs' speech unprotected. *Tinker* itself clearly supports this conclusion: "conduct by the student . . . which for any reason . . . materially disrupts classwork or involves substantial disorder or invasion of the rights of others *is, of course, not immunized by the constitutional guarantee of freedom of speech*."[36] This Court rightly noted that Plaintiffs must have engaged in constitutionally protected activity to sustain their First Amendment retaliation claims.[37] But because *Tinker* applies here, Plaintiffs cannot establish that they engaged in protected activity. Thus, Plaintiffs' First Amendment retaliation claims should have been dismissed.

*Jenkins* demonstrates the proper analysis in this context. There, the plaintiffs asserted a First Amendment retaliation claim, arguing that they were suspended for their alleged participation in certain campus disturbances.[38] The Fifth Circuit upheld the college's decision to suspend the protest's organizers and active participants, holding: "The actions of appellants resulted in a material disruption of the campus and of the rights of others. *They were not protected by the First Amendment*."[39]

Other courts have reached the same conclusion. For instance, in *Salehpour v. Univ. of Tennessee*, the Sixth Circuit found that a plaintiff's First Amendment retaliation claim "fails at the inception" as his materially disruptive speech "was not protected activity" under *Tinker*.[40] And in *Davis v. Angelina Coll. Bd. of Trustees*, a Texas-based district court applied *Tinker* to dismiss a student's First Amendment retaliation claim on grounds that (1) his disruptive speech was not "constitutionally protected" and

---

[36] 393 U.S. at 513 (emphasis added).
[37] ECF 62, 32; *see also Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).
[38] *Jenkins*, 506 F.2d at 994.
[39] *Id.* at 1003 (emphasis added). The Fifth Circuit reversed the suspension decision for one student who did not actively participate in the protest and who only came to the area in question "after the time when the final group of students had dispersed." *Id.* at 1001–02.
[40] 159 F.3d 199, 208 (6th Cir. 1998).

thus (2) he could not show that "he was engaged in constitutionally protected activity."[41]

Here, this Court determined that UT Austin officials "could have reasonably forecasted that the April 24th protest would become a substantial disruption to school activities."[42] And Plaintiffs admit they were all active participants in this protest.[43] Because *Tinker* applies to public universities, the Court should have found that Plaintiffs' participation in the protest was unprotected and dismissed their First Amendment retaliation claims for lack of constitutionally protected activity.[44]

The same result is required even accepting Plaintiffs' allegation that they attended a "peaceful" protest.[45] It is true that the First Amendment ordinarily protects such protests, but *Tinker* shifts the focus of the analysis. It is well settled in this circuit and others that the *Tinker* inquiry turns on "the objective reasonableness *vel non* of a forecasted substantial disruption."[46] Thus, Plaintiffs' subjective belief that the April 24th protest would not be substantially disruptive, or their intent to keep their own protest activities peaceful, cannot defeat an otherwise valid *Tinker* defense.[47] Nor does *Tinker* require Defendants to show that the April 24th protest was actually disruptive.[48]

---

[41] No. 9:17-CV-00179, 2018 WL 10111001, at *8 (E.D. Tex. June 1, 2018).

[42] ECF 62, 38.

[43] *See, e.g.*, ECF 42, ¶ 1 ("This is a civil rights action challenging the unlawful arrests and retaliatory discipline imposed on Plaintiffs, a group of students and peaceful demonstrators at the University of Texas at Austin . . . , *for their participation in a Palestine solidarity protest on April 24, 2024*.") (emphasis added); *id.* at ¶ 2 ("On April 24, 2024, *Plaintiffs joined a nationwide student movement advocating for Palestinian liberation and protesting* U.S. support for Israel's genocidal assault on Gaza, including their universities' investments in weapons manufacturing.") (emphasis added); *id.* at ¶ 41 ("*Plaintiffs' participation in the decentralized, national movement for Palestinian liberation* must be viewed in the context of this large surge in student activism . . . .") (emphasis added); *see also id.* at ¶¶ 205, 208, 237, 263, 269, 275, 281, 321.

[44] *See, e.g.*, *Jenkins*, 506 F.2d at 1003; *Salehpour*, 159 F.3d at 208; *Davis*, 2018 WL 10111001, at *8.

[45] ECF 62, 32–33.

[46] *Bell*, 799 F.3d at 398; *see also N.J. by Jacob v. Sonnabend*, 37 F.4th 412, 426 (7th Cir. 2022); *Doe v. Hopkinton Pub. Sch.*, 19 F.4th 493, 509 (1st Cir. 2021).

[47] *See, e.g.*, *Doe*, 19 F.4th at 509 ("[T]here is no intent requirement under *Tinker*. The test under *Tinker* is objective, focusing on the reasonableness of the school's response, not the intent of the student.").

[48] *See Bell*, 799 F.3d at 397 ("The *Tinker* test is satisfied when: an actual disruption occurs; *or the record contains facts which might reasonably have led school authorities to forecast substantial disruption* of or material interference with school activities.") (emphasis added) (quotations omitted); *Cuff ex rel. B.C. v. Valley*

Instead, *Tinker* focuses on whether the facts support the school officials' proscription of student speech.[49] And Fifth Circuit precedent cautions that "*this is not a difficult burden, and the [school officials'] decisions will govern if they are within the range where reasonable minds will differ.*"[50] This Court already answered this key issue in Defendants' favor.[51] Plaintiffs' remaining First Amendment retaliation claims should therefore be dismissed.

### B.   *Tinker* Also Acts As An Exception To The First Amendment; One That Allowed UT Austin To Lawfully Cancel The April 24th Protest.

In *Morgan v. Swanson*, the Fifth Circuit noted that the Supreme Court "has delineated five narrow exceptions for when school officials may restrict specific student speech."[52] *Tinker* is one of the five listed exceptions.[53] The Fifth Circuit also noted that *Tinker* is the only exception that "permits school officials to engage in viewpoint discrimination—where the student speech is substantially and materially disruptive."[54]

Given that *Tinker* applies here, it acts as an exception to Plaintiffs' First Amendment rights; one that allowed UT Austin to legally cancel the April 24th protest and discipline students who attended this event.[55] Thus, Plaintiffs' official-capacity retaliation claims should have been dismissed.

### CONCLUSION

For the reasons above, this Court should grant Defendants' motion to reconsider and dismiss Plaintiffs' First Amendment retaliation claims in their entirety.

---

*Cent. Sch. Dist.*, 677 F.3d 109, 113 (2d Cir. 2012) ("[*Tinker*] does not require school administrators to prove that actual disruption occurred or that substantial disruption was inevitable."); *Lowery v. Euverard*, 497 F.3d 584, 596 (6th Cir. 2007) ("[The plaintiffs'] argument is without merit; it is based on the mistaken premise that *Tinker* requires actual disruption to occur before school officials may act.").
[49] *Bell*, 799 F.3d at 398.
[50] *Id.* (emphasis in original) (quotations omitted).
[51] *See* ECF 62, 38.
[52] 659 F.3d 359, 407 (5th Cir. 2011).
[53] *Id.*
[54] *Id.*
[55] *See id.*; *see also* ECF 62, 38 (finding that UT Austin's "[s]ubsequent discipline [of students] . . . could have reasonably been viewed as justified in light of the University's cancellation of the protest").

Dated: February 18, 2026                    Respectfully submitted,

                                                                  KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/ *Todd Dickerson*
TODD DICKERSON
Attorney-in-charge
Texas Bar No. 24118368
Office of the Attorney General
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(737) 228-7289 | FAX: (512) 320-0667
Todd.Dickerson@oag.texas.gov
**Attorneys for Defendants Davis and Eltife**

### CERTIFICATE OF SERVICE

    I certify that on February 18, 2026, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel.

/s/ *Todd Dickerson*

10